UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
LOVELY H., GLORIA Q., MICHELE N.,
individually and on behalf of all others similarly
situated,

               Plaintiffs,

               05 Civ. 6920 (LTS)

       - against -

VERNA EGGLESTON, as Commissioner of the
New York City Human Resources Administration,

               Defendant.
----------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE, AMEND THE COMPLAINT AND AMEND THE CLASS DEFINITION

THE LEGAL AID SOCIETY
Steve Banks
Attorney-in-Charge
Adriene Holder, Esq.
Attorney-in-Charge, Civil Practice Area
Scott Rosenberg, Director of Litigation
Kenneth R. Stephens, of counsel
Susan E. Welber, of counsel
Cheryl Williams, of counsel
199 Water Street, 3d Floor
New York, New York  10038
Telephone (212) 577-3300
Facsimile (212) 509-8753

         -and-

MILBANK, TWEED, HADLEY & McCLOY LLP
One Chase Manhattan Plaza
New York, NY 10038

By:   Scott A. Edelman (SE 5247)
      Kevin M. Ashby (KA 8905)
      Carolyn Wu
      *Attorneys for Plaintiffs*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    Phase I of the Case: Segregation at "Hub Centers" . . . . . . . . . . . . . . . . . . . 1
    B.    Phase II of the case: failure to provide
        reasonable accommodations at Job Centers . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.     PLAINTIFFS' MOTION TO INTERVENE SHOULD BE GRANTED . . . . . . . . 6

    A.    Standards Governing Permissive Intervention . . . . . . . . . . . . . . . . . . . . . . . 6
    B.    Permission to intervene should be granted . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        1.    The proposed intervenors present common questions
            of law and fact and will add to the Court's understanding
            of the claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II.    PLAINTIFFS' MOTION TO AMEND THE COMPLAINT
      SHOULD BE GRANTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    A.    Standards Governing Amendment of the Complaint . . . . . . . . . . . . . . . . . 11
    B.    Leave to Amend the Complaint Should Be Granted . . . . . . . . . . . . . . . . . 12

        1.    The amended complaint would add specificity to
            existing claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        2.    Plaintiffs allege colorable claims for relief . . . . . . . . . . . . . . . . . . 14
        3.    The amendments would not cause undue delay
            or prejudice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

III.   THE CLASS DEFINITION SHOULD BE UPDATED
      TO REFER TO PERSONS DESIGNATED AS
      PARTICIPANTS IN THE WeCARE PROGRAM . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.,
748 F.2d 774, 783 (2d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Cortigiano v. Oceanview Manor Home for Adults, 227 F.R.D.
194, 202 (E.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Davis v. Smith, 431 F. Supp. 1206, 1209 (S.D.N.Y.), aff'd,
607 F.2d 535 (2d Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Degrafinreid v. Ricks, 417 F. Supp. 2d 403, 407 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . 6, 7

Diduck v. Kaszycki & Sons Contractors, 147 F.R.D. 60,
62 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Doe v. Pataki, 3 F. Supp. 2d 456, 473-74 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . 15

Eckert v. Equitable Life Assur. Soc'y of the United States,
227 F.R.D. 60, 64 (E.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Ellender v. Schweiker, 550 F. Supp. 1348, 1360 (S.D.N.Y. 1982) . . . . . . . . . . . . . . . 7, 10

Foman v. Davis, 371 U.S. 178, 182 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

H.L. Hayden Co. v. Siemens Med. Sys., Inc., 797 F.2d 85,
89 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Lovely H. v. Eggleston, 235 F.R.D. 248 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . 2

McNeill v. New York City Hous. Auth., 719 F. Supp. 233,
250 (S.D.N.Y. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991) . . . . . . . . . . . . . 12, 14

S.S. Silberblatt, Inc. v. East Harlem Pilot Block, 608 F.2d 28,

42 (2d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856
(2d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

Swift v. Toia, 450 F. Supp. 983, 990 (S.D.N.Y. 1998),
aff'd, 598 F.2d 312 (2d Cir. 1979), cert. denied, 444 U.S. 1025 (1980) . . . . . . . . . . . . . . 6

United States Postal Serv. v. Brennan, 579 F.2d 188, 191 (2d Cir. 1978) . . . . . . . . . . . . 7

**Federal Regulation**

Fed. R. Civ. P. 15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Fed. R. Civ. P. 23(d) and 24(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**State Statutes**

State Human Rights Law, N.Y. Exec. Law § 292(21) (McKinney's 2005) . . . . . . . . . . . 2

**Statutes**

Americans with Disabilities Act of 1990 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Americans with Disabilities Act,  42 U.S.C. §§ 12101 . . . . . . . . . . . . . . . . . . . . . . . . 2, 14

## PRELIMINARY STATEMENT

Plaintiffs submit this memorandum of law in support of their motion to intervene additional class members as party plaintiffs pursuant to Fed. R. Civ. P. 23(d) and 24(b), and to amend the complaint pursuant to Fed. R. Civ. P. 15(a).  The purpose of the motion is to add parties who assert allegations that are representative of the plaintiffs' claims regarding the failure of the New York City Human Resources Administration ("HRA") to provide reasonable accommodations at Job Centers, and to add specificity to the claims regarding Job Centers.  In light of the closing of HRA's hub centers, plaintiffs also seek to update the class definition so that it refers to persons designated as participating in the WeCARE program rather than to persons who were or will be transferred to a hub center.

## BACKGROUND

### A.    Phase I of the Case: Segregation at "Hub Centers"

This action involves allegations of discrimination on the basis of disability at "hub centers" and "Job Centers" in New York City operated by HRA.  The case arises out of HRA's WeCARE ("Wellness, Comprehensive Assessment, Rehabilitation and Employment") program. As WeCARE was originally conceived, public assistance recipients who have a mental or physical impairment had their public assistance cases transferred from their local Job Center to one of three "hub centers" in the Bronx, Brooklyn, or Manhattan.  They were assigned to one of two WeCARE vendors, which were charged with assessing their medical and physical impairments and either providing appropriate rehabilitative services or assisting in obtaining permanent disability benefits.

Although the cases of WeCARE clients were assigned to hub centers, the WeCARE vendors did not operate out of those hub centers; to the contrary, their offices, and those of their subcontractors, are located elsewhere throughout New York City.  The hub centers offered no unique services to disabled clients.  Indeed, with regard to public assistance recipients, the hub centers functioned just like ordinary Job Centers – except that almost all clients assigned to the hub centers were disabled.[1]

In the initial phase of this case, plaintiffs sought a preliminary injunction prohibiting further case transfers from local Job Centers to the hub centers.  Plaintiffs alleged that the involuntarily centralization of services at hub centers that were segregated on the basis of disability violated federal and state laws prohibiting disability discrimination.  Plaintiffs also alleged that the procedure HRA adopted for requesting and obtaining an exemption from transfer violated due process of law.  Plaintiffs moved for certification of a class of public assistance recipients who have a disability within the meaning of the State Human Rights Law, N.Y. Exec. Law § 292(21) (McKinney's 2005), and who have received or will receive a notice transferring their case to a hub center, and a subclass consisting of all class members who have a disability within the meaning of the Americans with Disabilities Act,  42 U.S.C. §§ 12101 et seq.

On April 19, 2006, the Court granted plaintiffs' motion to certify a class and subclass pursuant to Rule 23(b)(2) (the "April 19 Order").  Lovely H. v. Eggleston, 235 F.R.D. 248 (S.D.N.Y. 2006).  The main class is defined as:

---

[1] About 10 percent of all persons assigned to the hub centers were not disabled, but were assigned because someone else on the public assistance case was disabled.  See Lovely H. v. Eggleston, 235 F.R.D. 248, 261 n.14 (S.D.N.Y. 2006).

> recipients of public assistance, food stamps and/or Medicaid who have received or will receive a notice from the New York City Human Resources Administration involuntarily transferring their case to one of three 'hub' centers in Manhattan, the Bronx or Brooklyn in connection with the WeCARE program.

The subclass is defined as: "main class members who (a) have a physical or mental impairment that substantially limits one or more major life activities within the meaning of the Americans with Disabilities Act of 1990, (b) have a record of such an impairment, or (c) are regarded as having such an impairment." Id. at 258.

Additionally, the Court accepted supplemental jurisdiction over plaintiffs' state law claims, and found a likelihood of success on both the state and federal law segregation claims. Id. at 258-61. Finding that the "physical and mental trauma" occasioned by forcing disabled class members to travel substantial distances to hub centers constituted irreparable injury, id. at 262, the Court granted plaintiffs' motion for a preliminary injunction and enjoined HRA from reassigning class members' cases to the hub centers involuntarily. The Court afforded HRA 60 days to offer WeCARE participants whose cases have already been reassigned to a hub center the option of conducting through their nearest neighborhood center all of the interactions, and receiving through those offices all of the services, that are available to non-disabled benefit recipients through those offices. Id. at 262-63.

In response to the Court's order, HRA notified the Court that it intended to close the three hub centers and transfer the cases of WeCARE participants back to their local Job Centers. On May 18, 2006, the Court suspended that portion of the April 19 order that required the formulation of opt-out procedures and notifications "pending the implementation of HRA's plan to close the WeCARE hub centers and reassign WeCARE designees to their respective neighborhood

3

centers." (Order filed May 19, 2006.)

> **B.      Phase II of the case: failure to provide
> reasonable accommodations at Job Centers**

In the preliminary injunctive phase of this case, the litigation focused exclusively on

discrimination based on disability at the hub centers. However, the Complaint makes a number

of allegations about the denial of reasonable accommodations at Job Centers. Specifically, ¶ 78

of the Complaint alleges:

> 78.      HRA has failed to adequately train and supervise its staff in local Job Centers
> regarding the rights of qualified individuals with disabilities, their rights to receive
> benefits and services pursuant to the ADA, and how to provide reasonable
> accommodations to such individuals.

Similarly, ¶ 80 of the Complaint alleges:

> 80.      Local Job Centers . . . fail to provide reasonable modifications that HRA
> specifically requires its WeCARE Program vendors and subcontractors to provide
> clients participating in WeCARE Program services.

Paragraphs 81-84 specify the accommodations that the WeCARE vendors are required to

provide. For example, the WeCARE vendors are required to provide certain case management

services (¶ 81), inform clients about the right to accommodations (¶ 82), and to accommodate

clients' needs in rescheduling appointments (¶ 84). Paragraph 85 alleges that these practices are

not offered by HRA staff at the agency's own Job Centers. Paragraph 87 alleges that although

there is a generic ADA policy directive that applies to all Job Centers, it fails to address many of

the needs, or include references to many of the reasonable accommodations that are described in

HRA's guidelines applicable to WeCARE vendors.

Paragraph 162 of the Complaint requests relief regarding reasonable accommodations at

the local Job Centers. In that paragraph, plaintiffs request that the Court:

> Order defendant, her agents, employees and all persons acting in
> concert with them to make reasonable accommodations available
> to class members in a manner that allows them to comply with the
> conditions of eligibility for public assistance, Food Stamps and
> Medicaid at their local welfare centers.

At a conference before the Court on May 25, 2006, the Court recognized that these allegations concerning Job Centers were at issue in the case (5/25/06 Tr. at 21, 24), and observed that the issue of reasonable accommodations at Job Centers "was contemplated by this complaint, even in the hub-center-focused incarnation of it." (Id. at 23.) The Court reasoned that, "at the end of the day" the plaintiffs were seeking transfers back to the Job Centers; and at those local centers, they need to be able to get their benefits effectively. (Id. at 22-23.)

The City, however, objected that none of the named plaintiffs alleged in the Complaint that they had been aggrieved by the denial of accommodations at Job Centers. (Id. at 23-25.) Indeed, this was the case: Because the named plaintiffs had transferred from their local Job Centers to the hub centers before the Complaint had been filed, allegations by the named plaintiffs focused on practices at the hub centers. Responding to the City's objection, the Court inquired whether plaintiffs intended to move for permission to amend the Complaint to add allegations regarding the Job Centers (id. at 29), and afforded them until July 31, 2006 to do so (id. at 34). On July 31, the Court extended that date on consent to August 4, 2006. (Order dated July 31, 2006.)

In this motion, plaintiffs request permission to intervene three named plaintiffs who are class members in this case and who make allegations regarding the denial of reasonable accommodations at Job Centers. They also seek permission to amend the Complaint to add similar allegations by one of the original named plaintiffs, Gloria Q., and to add specificity to

certain of the systemic allegations regarding reasonable accommodations at Job Centers.

## ARGUMENT

## POINT I

## PLAINTIFFS' MOTION TO
## INTERVENE SHOULD BE GRANTED

### A.   Standards Governing Permissive Intervention

Two provisions of the Federal Rules of Civil Procedure authorize intervention in a class action case.  Rule 24(b) provides that upon timely application, anyone may be permitted to intervene in an action "when an applicant's claim or defense and the main action have a question of law or fact in common."  Additionally, Rule 23(d) provides that in the conduct of class actions, the court may make appropriate orders permitting class members "to intervene and present claims or defenses."  Both of these rules authorize the intervention of the proposed intervenors in this case.

Intervention under Rule 24(b)(2) is subject to the discretion of the district court.  H.L. Hayden Co. v. Siemens Med. Sys., Inc., 797 F.2d 85, 89 (2d Cir. 1986).  Courts in this district have held that in exercising that discretion, Rule 24(b)(2) is to be liberally construed. Degrafinreid v. Ricks, 417 F. Supp. 2d 403, 407 (S.D.N.Y. 2006); McNeill v. New York City Hous. Auth., 719 F. Supp. 233, 250 (S.D.N.Y. 1989); Davis v. Smith, 431 F. Supp. 1206, 1209 (S.D.N.Y.), aff'd, 607 F.2d 535 (2d Cir. 1977).  It is satisfied "where a single common question of law or fact is involved, despite factual differences between the parties."  McNeill, 719 F. Supp. at 250; see Swift v. Toia, 450 F. Supp. 983, 990 (S.D.N.Y. 1998), aff'd, 598 F.2d 312 (2d Cir. 1979), cert. denied, 444 U.S. 1025 (1980) ("identity of facts is not necessary and it is

sufficient that a common question of law is presented").

One purpose served by permitting intervention in class action litigation is to present the court with a richer understanding of the various factual scenarios that are at issue.  Thus, courts have often granted intervention where it "will add to the Court's understanding of the facts." Ellender v. Schweiker, 550 F. Supp. 1348, 1360 (S.D.N.Y. 1982); see Degrafinreid, 417 F. Supp. at 407 (factors include "whether permitting intervention will assist in developing and resolving the factual and legal disputes in the litigation"); In re Visa Check/Mastermoney Antitrust Litig., 190 F.R.D. 309, 312 (E.D.N.Y. 2000) (same).  In McNeill, for example, the district court held that "[i]t may even be the case that efficiency is promoted by intervention, as the proposed plaintiffs' claims may elucidate the peculiar difficulties allegedly visited on tenants by [the defendant's] policies."  McNeill, 719 F. Supp. at 250.

Other factors relevant to permissive intervention under Rule 24(b) include whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties, whether the applicant will benefit by intervention, the nature and extent of the intervenors' interests, and whether their interests are adequately represented by the other parties.  See United States Postal Serv. v. Brennan, 579 F.2d 188, 191 (2d Cir. 1978).

In class action cases, Rule 23(d)(2) provides a separate basis for permitting class members to intervene in a pending class action.  See Eckert v. Equitable Life Assur. Soc'y of the United States, 227 F.R.D. 60, 64 (E.D.N.Y. 2005); Diduck v. Kaszycki & Sons Contractors, 147 F.R.D. 60, 62 (S.D.N.Y. 1993).  Rule 23(d)(2) authorizes the court to make appropriate orders permitting class members "to intervene and present claims or defenses, or otherwise to come into the action."  For the reasons set forth below, intervention should be permitted under Rule

7

24(b)(2) and Rule 23(d)(2).

**B.    Permission to intervene should be granted**

    **1.    The proposed intervenors present common questions of law and fact and will add to the Court's understanding of the claims**

As noted, the Complaint makes a number of allegations about HRA's failure to provide reasonable accommodations at Job Centers. For example, the Complaint alleges that HRA has failed to adequately train and supervise its staff in local Job Centers regarding the rights of qualified individuals with disabilities (¶ 78). Likewise, the Complaint alleges that HRA fails to provide certain accommodations at Job Centers that the WeCARE vendors are required to provide (¶¶ 80, 85), including providing case management services (¶ 81), informing clients about the right to accommodations (¶ 82), identifying accommodations needed by clients (¶ 83), and accommodating clients' needs in rescheduling appointments (¶ 84).

Intervention is appropriate here because the proposed intervenors allege facts and assert claims in common with these allegations in the original complaint. Specifically:

- Eula S. alleges that HRA fails to accommodate her need to reschedule appointments at the Job Center when those appointments conflict with medical appointments. (Decl. of Eula S., ¶ 6-8.) She also alleges no one at HRA has ever informed her that she could get a reasonable accommodation (¶ 11).

- Courtney B alleges that HRA failed to provide reasonable accommodations necessary to enable her to continue to receive public benefits, including providing assistance in verifying eligibility for benefits, placement in a "homebound" status under which she would not be called in for appointments, and/or case

8

management services to assist her in meeting HRA program requirements.  (Decl. of Craig Acorn, ¶ 20.)

- Laura S. alleges that HRA fails to accommodate her medical need for assignment to a Job Center closer to the homeless shelter where she lives, and for shorter waiting times necessary to accommodate her mental disability when she attends appointments at her Job Center.  (Decl. of Laura S., ¶¶ 7, 10.)

All four intervenors allege facts that illustrate specific examples of the more general allegations in ¶¶ 78-85 of the complaint.  Thus, ¶ 84 alleges generally that HRA fails to accommodate the needs of disabled persons to reschedule appointments, while Eula S. describes a specific instance of that practice.  Paragraph 81 alleges that HRA fails to provide certain case management services, and Courtney B (through her advocate, Craig Acorn) describes specific kinds of case management services that she requires because of her disability in order to continue to receive benefits.  So, too, ¶ 78 alleges that HRA has failed to adequately train and supervise staff in local Job Centers regarding the rights of persons and how to provide reasonable accommodations to them.  All of the proposed intervenors allege facts from which the court could infer that HRA has failed to provide adequate training to Job Center personnel regarding the rights of the disabled.

In short, intervention should be granted because the proposed intervenors have questions of law and fact that are in common with those alleged in the complaint.  Intervention will also assist the court in understanding more fully and completely the types of accommodations required by persons who are disabled and the systems that must be put in place to provide them. For example, disabled persons often require shorter waiting times, greater flexibility in

rescheduling appointments, shorter travel distances than non-disabled persons, or classification as "home bound." The proposed intervenors illustrate those types of situations in concrete and visible ways that will assist the court in better understanding these issues.

### 2. Intervention would not delay or prejudice the rights of the original parties

Because this litigation is still in its early phases, and because the intervenors and the original plaintiffs are represented by the same counsel, intervention would not delay or prejudice the rights of the original parties. See Ellender, 550 F. Supp. at 1360. In particular, the defendant would suffer no legally cognizable prejudice if intervention is granted. Discovery regarding the "Job Center" phase of this case has not even begun, so no delay would be occasioned on that account. And because the proposed intervenors merely present the court with examples of allegations that are already broadly raised in the complaint, no new issues are involved.

No undue delay in prosecuting the Job Center claims was occasioned merely because plaintiffs moved first for a preliminary injunction with respect to the hub centers. Litigation regarding the hub centers came first because, as the Court found, establishment of the hub centers created immediate and irreparable injury for thousands of class members. The plaintiffs quite properly turned to those issues first. No undue delay was occasioned simply because plaintiffs addressed the hub center issues first and turned second to the more general problems at all Job Centers.

Thus, there is neither undue delay nor prejudice associated with the intervention motions. For these reasons, the motions to intervene should be granted.

10

**POINT II**

**PLAINTIFFS' MOTION TO AMEND
THE COMPLAINT SHOULD BE GRANTED**

Plaintiffs also move to amend the Complaint in two respects.  First, they seek permission to amend the Complaint to describe events that happened to one of the original named plaintiffs, Gloria Q., after the filing of the original complaint.  These facts illustrate an important problem for disabled class members related to a procedure called "autoposting" that is used by one of the City's computer systems.  Second, they seek to add specificity to certain of the claims regarding HRA's systemic denial of reasonable accommodations and the reasons for those systemic practices.

**A.      Standards Governing Amendment of the Complaint**

Rule 15(a) declares that leave to amend "shall be freely given when justice so requires." As the Supreme Court has held, "this mandate is to be heeded."  Foman v. Davis, 371 U.S. 178, 182 (1962).  "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  Id.; see Conley v. Gibson, 355 U.S. 41, 48 (1957) (amendments as a general matter are favored in order "to facilitate a proper decision on the merits").  In Foman, the Supreme Court listed a number of factors that counsel against permitting an amendment, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  Foman, 371 U.S. at 178.  For the reasons set forth below, none of those factors is relevant here.

Construing the command in Rule 15(a) that leave to amend shall be granted "when justice so requires," the Second Circuit has held that "if the plaintiff has at least colorable grounds for relief, justice does so require unless the plaintiff is guilty of undue delay or bad faith or unless permission to amend would unduly prejudice the opposing party." S.S. Silberblatt, Inc. v. East Harlem Pilot Block, 608 F.2d 28, 42 (2d Cir. 1979); see Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 783 (2d Cir. 1984). Significantly, the Second Circuit has stressed that "[t]his principle should be applied with particular strictness," as here, "when the plaintiff seeks to file an amended complaint charging a violation of his civil rights." Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991). The Second Circuit has also emphasized that "[m]ere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981).

### B.    Leave to Amend the Complaint Should Be Granted

#### 1.    The amended complaint would add specificity to existing claims

The plaintiffs seek leave to amend to add specificity to certain of the claims regarding HRA's systemic denial of reasonable accommodations throughout all of HRA's Job Centers. The amendments will provide additional clarity and specificity to the existing claims, and will enable the Court and the parties to focus on specific system-wide practices that give rise to class-wide violations. The additional allegations include the following:

- HRA does not have systems in place to enable disabled clients to utilize the phone, fax, and/or mail to communicate with HRA Job Centers as an accommodation to their disabilities. (Proposed Amended Class Action Complaint

12

¶ 96 ["hereafter PAC __"])

- HRA does not have systems in place to ensure that appointments can be scheduled at flexible times or to minimize waiting times or to allow transfers to a different Job Center to accommodate a travel hardship as an accommodation for a disability.  (PAC ¶ 97-98, 101)

- HRA does not have a procedure in place to prevent its computer systems from causing a case closing or sanction to occur automatically when an appointment is missed because of a disability (a practice known as "autoposting"). (PAC ¶ 98-100)

- HRA does not have a procedure in place to accept and act upon requests for reasonable accommodation at the Job Center level. (PAC ¶ 91-94)

- HRA does not have an effective procedure for ensuring that when requests are made to HRA's ADA compliance officer, they are acted upon at the Job Center level. (PAC ¶ 93-94)

Each of these practices is illustrated by one or more of the named plaintiffs and/or proposed intervenors.  For example, proposed intervenor Eula S. illustrates HRA's lack of a system adequate to enable clients to communicate with Job Centers by phone, fax, and/or mail (Decl. of Eula S., ¶ 10.)  Proposed intervenors Eula S. and Laura S. illustrate HRA's lack of systems needed to ensure that appointments are scheduled flexibly, and/or waiting times minimized, when needed as a reasonable accommodation. (Decl. of Eula S., ¶ 6-8; Decl. of Laura S., ¶ 7).  Proposed intervenor Courtney B illustrates the absence of a procedure for ensuring that when requests are made to HRA's ADA compliance officer, they are acted upon at the Job

Center level in a timely fashion.  (Decl. of Craig Acorn, ¶ 25.)

The absence of a procedure to prevent HRA's computer systems from causing a case closing or sanction to occur automatically when an appointment is missed because of a disability ("autoposting") is illustrated by facts that occurred after the filing of the complaint to one of the original named plaintiffs, Gloria Q.  In Gloria Q's case, HRA was unable to prevent an automatic case closing even when the Job Center had been contacted in advance and had agreed to cancel an appointment.  (Decl. of Gloria Q., ¶ 7-9.)

### 2.    Plaintiffs allege colorable claims for relief

Leave to amend the complaint to add these allegations should be granted.  First, all of the allegations present colorable claims for relief.  In considering this question, the Court is obliged to apply the same standards that pertain to a motion to dismiss under Rule 12(b)(6).  See Ricciuti, 941 F.2d at 123 (the court "should not deny leave to file a proposed amended complaint unless that same rigorous standard [under Rule 12(b)(6)] is met").  In particular, the Court must assume the truth of the allegations in the proposed amended complaint, and leave should not be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Id. (quoting Conley, 355 U.S. at 45-46).

Applying those standards, leave to amend the complaint should be granted.  Federal law (the Americans with Disabilities Act and § 504 of the Rehabilitation Act of 1973) and various state and local laws require the provision of reasonable modifications when necessary to accommodate a disability.  For example, 28 C.F.R. § 35.130(b)(7) provides that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can

14

demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."  Practices like those alleged in the proposed amended Complaint that impede or prevent the provision of such accommodations violate that mandate.  None of the accommodations sought here – such as flexibility in scheduling appointments, or the use of phone, fax and mail to communicate with Job Centers – would constitute a fundamental alteration of HRA's program.  Moreover, even if such an issue arose, the question would turn on factual determinations that could not be resolved as a pure issue of law under the standards applicable to Rule 12(b)(6).

### 3.   The amendments would not cause undue delay or prejudice

Additionally, no undue delay or prejudice to HRA would be occasioned by permitting these amendments.  As noted, absent a showing of bad faith or undue prejudice, mere delay does not provide a basis for a district court to deny the right to amend.  State Teachers Ret. Bd. 654 F.2d at 856.  There is clearly neither bad faith nor undue prejudice here.  In particular, adding specificity to claims that already exist in the complaint does not in any way constitute "prejudice."  See Doe v. Pataki, 3 F. Supp. 2d 456, 473-74 (S.D.N.Y. 1998); Cortigiano v. Oceanview Manor Home for Adults, 227 F.R.D. 194, 202 (E.D.N.Y. 2005).  To the contrary, the additional specificity and clarity would benefit the Court and the defendant by focusing attention on the specific practices that the plaintiffs challenge.

For these reasons, plaintiffs' motion to amend the complaint should be granted.

15

## POINT III

## THE CLASS DEFINITION SHOULD BE UPDATED TO REFER TO PERSONS DESIGNATED AS PARTICIPANTS IN THE WeCARE PROGRAM

In response to the injunction issued by the Court on April 19, 2006, HRA is closing its hub centers and transferring WeCARE designees back to their neighborhood Job Centers. The class definition refers to persons who were or will be transferred to a hub center. In light of the closing of HRA's hub centers, the class definition should be updated so that it refers to persons designated as participants in the WeCARE program. Accordingly, plaintiffs request that the Court amend the class definition to read as follows:

> recipients of public assistance, food stamps and/or Medicaid who are or will be designated as participants in the WeCARE program.

No substantive change would be effected by this amendment, as hub center transferees are one and the same as WeCARE program participants. Notably, in the Court's Order filed May on 19, 2006, the Court referred to these persons as "WeCARE designees."

## CONCLUSION

For the foregoing reasons, the Court should grant plaintiffs' motion to permit Eula S., Courtney B., and Laura S. to intervene as party plaintiffs pursuant to Fed. R. Civ. P. 23(d) and 24(b); to permit plaintiffs to file an amended class action complaint pursuant to Fed. R. Civ. P. 15(a); and to update the class definition so that it refers to persons designated as participants in the WeCARE program.

Dated: New York, New York
      August 4, 2006

THE LEGAL AID SOCIETY
Steve Banks, Attorney-in-Chief
Adriene Holder, Esq.
  Attorney-in-Charge, Civil Practice Area
Scott Rosenberg, Director of Litigation (SR 5579)
Kathleen Kelleher, of counsel (KK 0598)
Kenneth R. Stephens, of counsel (KS 7914)
Susan E. Welber, of counsel
Cheryl N. Williams, of counsel
199 Water Street, 3d Floor
New York, New York  10038
Telephone:  212-577-3300
Facsimile:   212-509-8753


By: _____
     Kenneth R. Stephens (KS 7914)


     MILBANK, TWEED, HADLEY & McCLOY LLP


By     Scott A. Edelman (SE 5247)
       Kevin M. Ashby (KA 8905)
       Carolyn Wu
       One Chase Manhattan Plaza
       New York, NY 10005
       Telephone:  212-530-5000
       Facsimile:   212-530-5219

       *Attorneys for Plaintiffs and the Plaintiff Class*